J-A05044-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| A.C.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| L.A.W. | : | No. 1507 WDA 2019 |

Appeal from the Order Entered October 3, 2019
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s): 2013-2018-D

BEFORE: BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.: FILED JULY 23, 2020

A.C.S. ("Father") appeals the October 3, 2019 order granting L.A.W. ("Mother") primary physical custody of their now three-year-old son, J.S., and endorsing Mother's relocation to Florida. We vacate the order and remand for further proceedings.

Mother and Father never married. J.S. was born in April 2017, and the family continued to reside together for approximately one and one-half years. On November 6, 2018, Father filed a complaint for primary physical custody of J.S. The following day, hours after she was served with Father's complaint, Mother filed a petition for Protection From Abuse ("PFA") alleging that she, but not J.S., was a victim of abuse. N.T., 7/11/19, at 23; N.T., 8/5/19, at 27-28.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The PFA court dismissed the PFA complaint, and nine weeks later it entered a temporary order granting Mother physical custody of J.S in Pennsylvania. In the interim, approximately six days before the court awarded Mother temporary custody, Mother filed notice of her proposed relocation to Napels, Florida. Following several days of trial, on October 3, 2019, the trial court entered the above-referenced order awarding Mother primary physical custody of J.S. and granting her petition to relocate to Florida. Notably, the trial court did not make any custody determinations on the record. Instead, having informed Father that it would consider an award of primary custody in a separate proceeding, the court entered a custody order awarding Mother primary custody of J.S. in Florida without discussing any of the custody or relocation factors outlined in the Child Custody Law in § 5328(a) and § 5337(h), respectively.[1]

Father's timely appeal followed. Father complied with Pa.R.A.P. 1925(a)(2)(i) by filing a Rule 1925(b) concise statement simultaneous with the appeal, but due to the trial court's delay in issuing its reasons for the

_____

[1] Section 5328(d) of Child Custody Law directs, "The court shall delineate the reasons for its decision on the record in open court or in a written opinion or order." Similarly, the Child Custody Law requires a trial court to consider all of the § 5328(a) best interests factors when "ordering any form of custody." 23 Pa.C.S. § 5328(a) (1)-(16). As we do not confront the trial court's best-interest analysis based on the incomplete evidence adduced during the relocation hearings, we do not enumerate the statutory factors herein.

- 2 -

custody decision, he filed the statement without the benefit of the trial court's explanation of the reasons for its decision.

Father presents six issues for our review, which we reordered for ease of disposition:

> 1.    Whether the trial court committed an error of law and abused its discretion by concluding that it would be in the best interest of the child to relocate to Florida with Mother when the custody and relocation factors were not met[.]
>
> 2.    Whether the trial court erred and abused its discretion by failing to schedule and obtain custodial evaluations when the trial court stated that it would do so and when the verified allegations, uncontroverted testimony[,] and evidence admitted the same[.]
>
> 3.    Whether the trial court erred by failing to file an opinion which sets forth its rationale in a timely manner[.]
>
> 4.    Whether the trial court erred and abused its discretion by granting custody and permitting relocation to a party who had a history of failing to comply with statutory rules, court orders[,] and had established a pattern of conduct to thwart the relationship of the child and Father . . . [.]
>
> 5.    Whether the trial court exhibited prejudice towards Father throughout the proceedings, bias favoring women[,] and thereby abused its discretion[.]
>
> 6.    Whether the court abused its discretion by making factual findings and conclusions of law without any support of record or in direct contradiction to testimony and evidence of record.

Father's brief at 7-9.

We review the child custody order according to the following scope and standard of review:

> This Court reviews a custody determination for an abuse of discretion. In re K.D., 144 A.3d 145, 151 (Pa. Super. 2016). We will not find an abuse of discretion "merely because a reviewing

court would have reached a different conclusion." Id. (citation omitted). Rather, "[a]ppellate courts will find a trial court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the product of partiality, prejudice, bias or ill will." Id.

R.L. v. M.A., 209 A.3d 391, 395 (Pa.Super.2019).

As Father's first two issues are dispositive, we address them at the outset. First, we review Father's assertion that the trial court erred in awarding primary physical custody to Mother after it advised Father that the instant proceedings did not implicate his complaint for primary physical custody. See Father's brief at 46-47, 57-58. For the reasons that we explain infra, the trial court erred in failing to address the competing petitions for primary physical custody and relocation collectively before entering a final custody order. See S.J.S. v. M.J.S., 76 A.3d 541, 549-50 (Pa.Super. 2013) (concluding that trial court properly engaged in "dual analysis" of the custody and relocation factors where there was no final custody order in place).

As outlined in the foregoing procedural primer, Father initiated this custody litigation on November 6, 2018, by filing a custody complaint. Having assumed temporary physical custody of J.S., Mother eventually filed a competing petition to relocate. The trial court scheduled several hearings to address Mother's petition. Throughout the proceedings, Father beseeched the trial court to address his custody complaint in conjunction with, or prior to, Mother's petition to relocate to Florida. While the trial court acknowledged that the matters were intertwined, over the course of the hearings, it denied

Father's requests, wavered about the precise nature of the proceedings, and eventually ruled that it would confront the custody complaint separately. See e.g., N.T., 7/11/19 at 169 ("I want to finish the relocation portion of this. Then, we will in the appropriate way get into the custody matter.").

The following exchange between Father's counsel and the trial court is telling. It occurred after Mother argued that the court "could grant a relocation at this point and still have further proceedings under the rules[.]" Id. at 167.

> [Father's Counsel]: . . . Your Honor, I truly need to know . . . - Your Honor, stated on the record from day one [that] this is a relocation hearing. Is this now a relocation hearing still?
>
> The Court: Well, let me be as clear as I can. Yes, it is a relocation hearing and I want to complete all of the [relocation] factors, all of your testimony, and I think we are on Factor 6, anyway.
>
> . . . .
>
> The Court: All of the factors on the relocation. Then, I am willing to bifurcate the matter. You can file motions, petitions pretrial statements, et cetera, so I can accommodate you. Because I don't want to surprise you in any way here. I honestly thought that these issues were so intertwined that it made common sense and it was logical to try to get all of this testimony in and decide the case. I thought that was in fairness to the clients and to both the mother and father.
>
> [Father's Counsel]: We're deciding a relocation hearing[?]
>
> The Court: To decide both issues to how —what's the custody order. It is pretty hard to even -you really couldn't, you can't do a custody order until you decide where people are living so . . . But I am willing to say let's stay on script. Finish the relocation proceeding. I am going to try to accommodate the mother's side by not having this continued for the 60 days and I am going to try to accommodate you by getting this relocation proceeding completed before we start anything on the final custody order.

. . . .

> THE COURT: So I am going back. I want to accommodate [Mother] by finishing [her] relocation proceeding, and I want to accommodate [Father] by not scrambling you into a [custody[2]] proceeding if you are not ready for it.

Id. at 169-71. Thereafter, the trial court scheduled a conference with counsel to coordinate the anticipated custody hearing. Id. at 172. Then, the court transitioned back to the matter at hand, "Now, on the relocation proceeding, can you estimate the amount of time we will need." Id.

The trial court's initial statement that it would consider Father's custody complaint during the hearings and its post hoc analysis of the custody and relocation factors in its overdue opinion are insufficient to overcome Father's claim of trial court error. While the trial court accurately stated that the issues of primary custody and relocation were so intertwined that it was only logical to try the cases jointly, it specifically advised Father that it would consider his custody petition separately and in due course. Id. at 169-72.

The prejudice to Father is palpable. As Father was not litigating a custody petition in light of the court's ruling to defer it, he did not adduce evidence specifically relevant to the best interest factors outlined § 5328(a). He simply tailored an opposition to Mother's petition to relocate, wherein she

_____

[2] The trial court misspoke by referencing a relocation proceeding rather than a custody trial. Father's counsel immediately corrected the misstatement, which we corrected in the quotation.

- 6 -

carried the sole burden of proof.[3]  Thus, the trial court's belated consideration of the § 5328(a) factors cannot cure the fact that the court denied Father the opportunity to present evidence relevant to the specific issue of primary custody.[4]  Phrased differently, by denying the parties the opportunity to litigate their respective cases concerning primary physical custody, the court failed to elicit evidence that related specifically to the § 5328(a) best-interest factors.  Indeed, it is apparent from the certified record that, when the trial court finally addressed those factors in relation to Father's custody complaint, it did so retroactively by gleaning facts from whatever evidence happened to be in the record.[5]

_____

[3] The Child Custody Law defines relocation as "A change in a residence of the child which significantly impairs the ability of a nonrelocating party to exercise custodial rights." 23 Pa.C.S. § 5322(a); see also C.M.K. v. K.E.M., 45 A.3d 417, 422 (Pa.Super. 2012).  As the party proposing relocation, Mother would typically bear the burden of proving relocation will serve the children's best interests.  See 23 Pa.C.S. § 5337(i).  However, in cases involving the determination of primary physical custody, the parents stand on equal footing. See 23 Pa.C.S. § 5327(a).

[4] Significantly, because Father relied upon the court's assertion that it would not consider his custody complaint, it is of no moment that Father does not assert that the trial court prohibited him from presenting specific evidence relevant to that issue.  The trial court decided a matter that, by its own assertion, was not before it.

[5]  By entering a final order granting Mother primary physical custody of J.S., the court confronted the precise relief that Father requested in the complaint and denied it.  Thus, if we permitted the trial court's order to stand, which we do not, Father's recourse would be to file a petition for modification of that custody order pursuant to 23 Pa.C.S. § 5338.

Consistent with S.J.S., supra, the trial court erred in refusing to permit Father the opportunity to present relevant evidence to address both the relocation factors under § 5337(h), as well as the best interest factors enumerated in § 5328(a). Accordingly, for all of the forgoing reasons, we vacate the trial court order, reinstate Father's custody complaint, and remand the matter for a comprehensive custody trial, where both parties may present evidence to determine the best interest of J.S. pursuant to § 5328(a).[6] Mindful that Mother exercised temporary physical custody of J.S. in Pennsylvania prior to the entry of the trial court's October 3, 2019 final order, which we vacate herein, we direct the trial court to hold a hearing within fifteen days of this memorandum to determine the feasibility of the immediate return to the status quo in Pennsylvania pending the completion of the custody proceedings in light of the COVID-19 pandemic. Specifically, the court should consider the earliest anticipated date for completing the custody trial, Mother's financial wherewithal, and her housing needs and employment opportunities in Pennsylvania.

_____

[6] We have explained, "where neither Mother nor Father is relocating and only the children stand to move to a significantly distant location, the relocation provisions . . . are not per se triggered[.]" D.K. v. S.P.K., 102 A.3d 467, 468 (Pa. Super. 2014). However, "in such cases, the trial court shall consider the relevant factors set forth in [S]ection 5337(h) insofar as they impact the final determination of the best interests of the child." Id.

Next, we address Father's contention that the trial court failed to order an anticipated custody evaluation pursuant to Pa.R.C.P. 1915.8(a), which provides that "[t]he court may order the child(ren) and/or any party to submit to and fully participate in an evaluation by an appropriate expert or experts." In rejecting Father's assertion, the trial court recounted its discussion of this issue during the hearing and concluded that Farther neglected to request a custody evaluation. The court stated in its Rule 1925(a) opinion,

> There was no abuse of discretion in failing to order custody evaluations, as no motion was made for such evaluations. They were suggested by the court, but no motion was made by either party.
>
> Father's counsel made an oral argument that Mother (only) have a "psychiatric" evaluation. This request was denied, as there was no basis for one. (There were no suggestions that Mother had any mental health issues, other than what may have been interpreted as fatigue or a postpartum issue following childbirth; and Father offered no factual basis for a court-ordered psychiatric evaluation). Even later, after exhaustive testimony by Father as to the faults and deficiencies of Mother, there appeared no reason to believe there was any basis for such an evaluation.
>
> The parties were actually advised that a custody evaluation would be helpful to the court, but neither party pursued custody evaluations.

Trial Court Opinion, 11/13/19, at 2.

The certified record belies the trial court's hindsight. Indeed, in utter contrast to the trial court's recitation, the trial court stated on the record that it would order a custody evaluation, which it was authorized to order sua sponte pursuant to Rule 1915.8. N.T., 4/26/19, at 23. Specifically, the trial court advised, "So I'm going to make an order and I'm going to order that we

- 9 -

have custody evaluations." Id. Furthermore, the insinuation that the trial court's remarks were simply suggestions or the court's reflection on a potential course of action is misleading. We highlight that, after making the foregoing ruling in open court, the trial court subsequently confirmed, "I'll make a ruling on how it is paid for." Id. at 24. Thus, the trial court did not simply invite the parties to file a request for the custody evaluation. Nor did it condition the custody evaluation upon receiving a subsequent request from either party. Since the trial court announced in open court its intent to order the custody evaluation, as authorized by Rule 1915.8, the court's rejection of Father's appellate argument because he did not reiterate a request for an evaluation is erroneous, particularly when the court subsequently advised the parties that it was deferring its decision on primary custody until a subsequent proceeding.[7] See e.g., N.T., 7/11/19 at 169-72. For these reasons, the trial court erred, and upon remand, the trial court shall order the promised custody evaluation and admit the resultant report into evidence during the comprehensive custody trial.

Accordingly, for all of these reasons, we vacate the custody order and remand for further proceedings consistent with this writing, including (1) an

_____

[7] In light of the trial court's indication that it would order custody evaluations, and its express deferral of the issue relating to primary physical custody to a later proceeding, we reject the insinuation that Father was at fault for neglecting to revisit the request for custody evaluations during the presumed relocation proceedings.

expedited hearing to address the impact of the COVID-19 pandemic on J.S.'s immediate return to Pennsylvania; and (2) a comprehensive custody hearing, wherein both parties can adduce evidence relevant to an award of primary physical custody, either with Father in Pennsylvania or Mother in Florida.

Order vacated. Case remanded. Jurisdiction relinquished.

President Judge Emeritus Bender joins the memorandum.

Judge Pellegrini files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/23/2020